O

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   MONIQUE HERNANDEZ, JOSEPH      )  Case No. EDCV 13-00967 DDP (DTBx)
     HERNANDEZ, OLIVIA HERNANDEZ,   )
12   GABRIELLE HERNANDEZ, JOANNA    )  ORDER GRANTING IN PART DEFENDANTS
     HERNANDEZ, ALEXIS HERNANDEZ,   )  CITY OF BEAUMONT, CORPORAL
13   JOSEPH HERNANDEZ JR. AND       )  FRANCISCO VELASQUEZ, JR., AND
     O.G., a minor by and through   )  CHIEF FRANK COE'S MOTION TO
14   her Guardian ad Litem OLIVIA   )  DISMISS PORTIONS OF PLAINTIFFS'
     HERNANDEZ,                     )  SECOND AMENDED COMPLAINT
15                                  )
                     Plaintiffs,    )  (DKT. NO. 42)
16                                  )
                                    )
17        v.                        )
                                    )
18   CITY OF BEAUMONT, OFFICER      )
     ENOCH CLARK, CORPORAL          )
19   FRANCISCO VELASQUEZ, JR.,      )
     CHIEF FRANK COE,               )
20                                  )
                     Defendants.    )
21   _____)

22        Presently before the Court is Defendants' Motion to Dismiss

23   Portions of Plaintiffs' Second Amended Complaint. For the reasons

24   stated in this order, the Motion is GRANTED IN PART.

25   **I. Background**

26        Plaintiff Monique Hernandez ("Monique") brings this action,

27   along with many of her family members, against Defendants City of

28   Beaumont ("City"), Officer Enoch Clark ("Clark"), Corporal

1  Francisco Velasquez Jr. ("Velasquez"), Chief Frank Coe ("Coe"), and
2  Does 1-10 (collectively "Defendants"), alleging various rights
3  violations while Monique was detained by Clark and Velasquez.
4  Plaintiffs Joseph Hernandez Sr. (Monique's father, "Joseph Sr."),
5  Olivia Hernandez (Monique's mother, "Olivia"), Gabrielle Hernandez
6  (Monique's sister, "Gabrielle"), Joanna Hernandez (Monique's
7  sister, "Joanna"), Alexis Hernandez (Monique's sister, "Alexis"),
8  and Joseph Hernandez Jr. (Monique's brother, "Joseph Jr.")
9  (collectively "Family Plaintiffs") witnessed the acts that are the
10 subject of this complaint and assert their own causes of actions
11 stemming from the incident. O.G. (Monique's minor daughter) is also
12 a plaintiff in this action.

13      On February 21, 2012, Clark and Velasquez, Beaumont Police
14 Department ("BPD") officers, detained Monique. (Second Amended
15 Complaint ("SAC") ¶ 21.) Clark conducted multiple field sobriety
16 tests and attempted several times to conduct a breathalyzer test on
17 Monique. (Id. ¶¶ 23-24.) Plaintiffs allege that Monique cooperated
18 with Clark throughout these tests. (Id.) Clark then began to arrest
19 Monique by handcuffing her left hand and holding her right hand
20 behind her back while standing behind her and shoving her against
21 the hood of his police car. (Id. ¶ 25.) Clark gave multiple
22 commands to Monique to "stop resisting," to which Monique allegedly
23 replied "I'm not resisting." (Id. ¶ 27.) Plaintiffs allege that at
24 no time did Monique physically resist Clark's efforts to handcuff
25 her or attempt to flee. (Id. ¶¶ 26, 28.)

26      Monique's family members Joseph Sr., Olivia, Gabrielle,
27 Joanna, Alexis, and Joseph Jr. were nearby when these actions
28 occurred and voiced their concerns about Clark's "heavy-handed

tactics," but they allege that they fully cooperated with commands to stay back. (<u>Id.</u> ¶ 30.) They allegedly became upset when Clark shoved Monique onto the hood of the car and pleaded with Clark and Velasquez to stop roughing her up, asked Velasquez to "help her," and yelled out "we are going to file a complaint." (<u>Id.</u> ¶ 31.)

After Monique was handcuffed, Plaintiffs allege that Clark shot his JPX pepper spray gun at Monique's eye from less than ten inches away. (<u>Id.</u> ¶ 32.) Plaintiffs allege that there was no legitimate justification for the discharge of pepper spray, as Monique was handcuffed and under complete control at the time and her family members were calm. (<u>Id.</u> ¶¶ 32-33.)

Plaintiffs allege that Monique's family members became "extremely anxious, distraught, and terrified when they heard a loud 'pop,' saw a 'red flash' and simultaneously heard Monique cry out in pain and saw blood running down her face." (Id. ¶ 33.) After witnessing the shooting, the family expressed grave concern about Monique's well-being and tried to aid her, but were prevented from doing so by Velasquez. (<u>Id.</u> ¶ 34.) Plaintiffs allege that Velasquez "pulled out his baton at Monique's family members in an intimidating manner and in an attempt to silence their protests." (<u>Id.</u>)

Plaintiffs allege that Clark and Velasquez then placed Monique in the back seat of a patrol car in handcuffs, despite the "obvious and serious nature of her injury." (<u>Id.</u> ¶ 38.) Monique's "distress was readily apparent": she was bleeding from the nose and mouth, moaning in pain, her eyes were swelling shut, and she was having difficulty breathing. (<u>Id.</u>) She was left in the patrol car for approximately ten minutes or longer unattended. (<u>Id.</u> ¶ 39.) Clark

and Velasquez allegedly failed to attempt to decontaminate
Monique's eyes. (<u>Id.</u> ¶ 40.) Further, Velasquez allegedly refused to
allow Monique's family members to aid her. (<u>Id.</u> ¶ 41.) Clark and
Velasquez allegedly told Monique's family members that she was okay
and that she was being taken to jail. (<u>Id.</u> ¶ 42.) In fact, she was
taken to the hospital. (<u>Id.</u>) Plaintiffs allege that Clark and
Velasquez subsequently lied about the incident "in a desperate
attempt to cover up their misconduct." (<u>Id.</u> ¶ 43.)

Monique's injuries from the pepper spray gun were severe. (<u>Id.</u>
¶ 37.) The shot split her right eye in half and severely damaged
the optic nerve in her left eye, leaving her with no light
perception in either eye and a terrible prognosis, even after
surgery. (<u>Id.</u>) Monique also sustained a traumatic brain injury.
(<u>Id.</u>) Monique had previously been employed full-time but now can no
longer work and requires full-time care and ongoing medical and
psychological treatment. (<u>Id.</u> ¶ 44.)

Plaintiffs allege that a reasonably trained officer would know
that firing a JPX gun at a distance of less than five feet away,
especially at the eyes, will cause serious injury. (<u>Id.</u> ¶ 35.)
Plaintiffs further allege that Clark's training on the JPX was
inadequate, consisting only of a one-time classroom presentation
followed by a written test, without any hands-on training
component. (<u>Id.</u> ¶ 36.) Plaintiffs further allege that Clark's
written test responses indicated that he did not know that the JPX
cannot be deployed at the subject's head area, evidencing the need
for further training. (<u>Id.</u>)

The Court previously granted in part Defendants' motion to
dismiss Plaintiffs' First Amended Complaint with leave to amend.

4

(Docket No. 34.) Plaintiffs allege twelve causes of action arising out of this incident in their Second Amended Complaint: (1) excessive force under 42 U.S.C. § 1983; (2) unreasonable search and seizure - false arrest under 42 U.S.C. § 1983; (3) failure to summon immediate medical care; (4) interference with familial relationship under 42 U.S.C. § 1983; (5) municipal and supervisory liability under 42 U.S.C. § 1983; (6) assault and battery; (7) negligence; (8) violation of Bane Act; (9) intentional infliction of emotional distress; (10) negligent training and supervision; (11) false arrest/false imprisonment; and (12) negligence - bystander. Defendants City, Coe, and Velasquez have filed this Motion to dismiss some of Plaintiffs' causes of action. (Docket No. 42.) Defendant Clark has answered the Second Amended Complaint and does not join in the Motion. (Docket No. 43.)

**II. Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other

1  words, a pleading that merely offers "labels and conclusions," a
2  "formulaic recitation of the elements," or "naked assertions" will
3  not be sufficient to state a claim upon which relief can be
4  granted. Id. at 678 (citations and internal quotation marks
5  omitted).

6      "When there are well-pleaded factual allegations, a court should
7  assume their veracity and then determine whether they plausibly
8  give rise to an entitlement of relief." Id. at 679. Plaintiffs must
9  allege "plausible grounds to infer" that their claims rise "above
10 the speculative level." Twombly, 550 U.S. at 555. "Determining
11 whether a complaint states a plausible claim for relief" is a
12 "context-specific task that requires the reviewing court to draw on
13 its judicial experience and common sense." Iqbal, 556 U.S. at 679.

14 **III. Discussion**

15     Defendants seek dismissal only as to some causes of action and
16 as to some Defendants. Therefore, the First, Second, Fourth, Sixth,
17 Ninth, Eleventh, and Twelfth Causes of Action, which are not
18 challenged by any Defendant, remain operative as filed.

19     A. Third Cause of Action: Failure to Summon Immediate Medical
20     Care
21     The third cause of action, for failure to summon prompt
22 medical care in violation of the Fourth Amendment, is asserted by
23 Monique against Clark and Velasquez. The sufficiency of the
24 pleadings is challenged only as to Velasquez.

25     The Ninth Circuit treats "the failure to provide adequate
26 medical care during and immediately following an arrest as a claim
27 properly brought under the Fourth Amendment and subject to the
28 Fourth Amendment's objective reasonableness standard." Von Haar v.

6

1  <u>City of Mountain View</u>, 2011 WL 782242, at *3 (N.D. Cal. 2011)

2  (citing <u>Tatum v. City and County of San Francisco</u>, 441 F.3d

3  1090(9th Cir. 2006)). In this context, "a police officer who

4  promptly summons the necessary medical assistance has acted

5  reasonably for purposes of the Fourth Amendment." <u>Tatum</u>, 441 F.3d

6  at 1099; <u>see also</u> <u>Maddox v. City of Los Angeles</u>, 792 F.2d 1408,

7  1415 (9th Cir. 1986) (holding, in the context of prison detention,

8  that officers act reasonably when they "seek the necessary medical

9  attention for a detainee when he or she has been injured while

10 being apprehended by either promptly summoning the necessary

11 medical help or by taking the injured detainee to a hospital").

12     Plaintiffs' Second Amended Complaint has cured the

13 deficiencies that the Court identified in their First Amended

14 Complaint regarding the length of the delay in obtaining medical

15 care for Monique and the observable severity of her injuries.

16 Plaintiffs have added allegations that more clearly detail the

17 obvious severity of Monique's injuries, including allegations that

18 there was "blood running down her face," that she was "bleeding

19 from the nose and mouth," "moaning in pain," "her eyes were

20 swelling shut," and "she was having difficulty breathing." (SAC ¶¶

21 33, 38.) Further, Plaintiffs allege that Velasquez was "within

22 close proximity to Monique" and could therefore see her injuries

23 and hear her moans and complaints. (<u>Id.</u> ¶ 41.)

24     Plaintiffs allege that, after sustaining these injuries,

25 Monique sat in the patrol car unattended for at least ten minutes

26 before the officers drove her to the hospital. (<u>Id.</u> ¶ 40.) While

27 she waited, Plaintiffs allege that Clark and Velasquez "were

28 concocting a story to cover up their wrongdoing as they waited for

7

a Sergeant to arrive to the scene," indicating that the officers were not attempting to summon aid or conferring with regard to the proper emergency treatment for Monique during that time. (Id. ¶ 60.) These facts, coupled with the officers' knowledge that Monique had been shot at close range with a JPX pepper spray gun, are sufficient to establish a plausible claim that it was clear to the officers that Monique needed emergency medical attention as soon as possible and that the officers failed to provide or obtain medical care as promptly as was necessary under the circumstances.

Defendants argue that the SAC alleges only that the officers did not "provide" or "obtain" medical care, but that the SAC is deficient because it fails to allege that the officers also did not promptly "request" medical care. However, given that Clark and Velasquez ended up taking Monique to the hospital themselves after at least ten minutes of delay, it is reasonable to infer that the officers did not "summon" or "request" medical care promptly. If medical care had been summoned, it is reasonable to assume that the officers would have waited for medical care to arrive rather than taking Monique to the hospital themselves. Plaintiffs have pled a plausible claim for failure to summon prompt medical care. Therefore, the Motion is DENIED as to the third cause of action.

B. Fifth Cause of Action: Municipal and Supervisory Liability

The fifth cause of action, for municipal and supervisory liability, is asserted by Monique and O.G. against City, Coe, and Does 1-10.

1. *Municipal Liability*

To state a claim for municipal liability against an entity defendant, a plaintiff must allege that the entity itself caused

the violation through a constitutionally deficient policy, practice

or custom. <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658 (1978).

In light of <u>Iqbal</u>, bare allegations are no longer sufficient
to state a claim for municipal liability. Instead, a plaintiff must
identify the training or hiring practices and policies that she
alleges are deficient, explain how such policy or practice was
deficient, and explain how such a deficiency caused harm to the
plaintiff. <u>Young v. City of Visalia</u>, 687 F.Supp.2d 1141, 1149-50
(E.D. Cal. 2009). In other words, a plaintiff must allege "specific
facts giving rise to a plausible <u>Monell</u> claim" instead of
"formulaic recitations of the existence of unlawful policies,
customs, or habits." <u>Warner v. County of San Diego</u>, 2011 WL 662993
(S.D. Cal. 2011).

Plaintiffs' claims for municipal liability include: "(a) a
custom, policy, and practice of deploying pepper spray on compliant
subjects, and/or subjects who were passively noncompliant in
contravention of the Fourth Amendment and established law
prohibiting the use of pepper spray on this category of subjects;
(b) inadequate training to prohibit the deployment of a JPX gun on
a compliant subject ...; (c) failing to provide hands-on training
to BPD officers, including Clark, in the use of a JPX gun to ensure
proficiency in its use prior to allowing BPD officers to use it in
the field; (d) failing to prohibit deployment of a JPX gun on a
subject's face and head area; (e) failing to prohibit the
deployment of a JPX gun at a distance of less than five feet; (f)
inadequate training regarding the injuries inflicted by a JPX gun
...; (g) inadequate training as to the decontamination process
after pepper spray is deployed on a subject; (h) failing to

institute appropriate policies, regarding constitutional procedures and practices for the purchase, assignment, and use of JPX pepper spray guns." (SAC ¶ 76.)

Plaintiffs' municipal liability claim can best be understood as an inadequate training claim. In order to state a claim for failure to train, a plaintiff must show: (1) a violation of a constitutional right; (2) a training policy that "amounts to deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact;" and (3) the constitutional injury would have been avoided with proper training. Young v. City of Visalia, 687 F. Supp. 2d 1141, 1148 (E.D. Cal. 2009) (citing Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007)).

In order to show deliberate indifference in the failure to train context, a "pattern of injuries" is "ordinarily necessary to establish municipal culpability and causation." Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 409 (1997). Municipal liability normally does not attach to a single incident. "[A]dequately trained officers occasionally make mistakes; the facts that they do so says little about the training program or the legal basis for holding the city liable." City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989). However, the Supreme Court has left open the possibility that under limited circumstances, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390.

1  //

2       Plaintiffs clearly plead a violation of Monique's Fourth

3  Amendment rights, satisfying the first requirement for their

4  failure to train claim. With regard to the deliberate indifference

5  requirement, Plaintiffs have cited no prior instances of

6  constitutional violations by BPD officers resulting from the use of

7  the JPX gun or similar devices, such as other pepper spray guns,

8  that would have put the City on notice that hands-on training in

9  the use of the JPX was necessary to avoid future constitutional

10 violations. As a result, Plaintiffs must premise their claim on the

11 narrow exception allowing a failure to train claim to proceed where

12 the need for additional training is "so obvious" that the failure

13 to provide that training amounts to deliberate indifference to the

14 rights of those that are likely to come into contact with the City

15 police.

16      The Court finds that the facts pled do not plausibly establish

17 that the need for additional training was "so obvious" that the

18 failure to provide it amounts to deliberate indifference by the

19 City. Training in the proper use of the JPX device was provided in

20 the form of a "one-time classroom presentation and a written test

21 following the presentation." (SAC ¶ 79.) Though the City clearly

22 had "notice of the gravity of the injuries that can result from

23 improper use of the JPX" (id.), the City's training program was not

24 obviously deficient for failing to provide hands-on training on the

25 JPX. It is not obvious that police officers would have to have

26 hands-on experience firing a JPX in order to know how to properly

27 use the device. Therefore, to the extent that Plaintiffs' failure

28

1  to train claim rests on the failure to provide hands-on training,

2  the SAC fails to state a claim for municipal liability.

3      Plaintiffs also appear to claim that there were deficiencies

4  in the content of the training program, though they appear to

5  direct such allegations at Defendant Coe rather than the City.

6  Plaintiffs allege that "Defendants Coe and Does 1 to 4 implemented

7  a deficient training policy on the JPX by not ensuring that BPD

8  police officers, including Clark, were adequately trained on the

9  following: (1) the circumstances when a JPX gun can be deployed

10 without violating constitutional rights; (2) the resultant injuries

11 to a subject when a JPX gun is deployed at a distance of less than

12 five feet; (3) prohibition against deployment to head and face

13 area; and (4) the decontamination process after deployment of the

14 JPX." (SAC ¶ 78.)

15     As currently pled, with regard to their municipal liability

16 claim, these allegations are insufficient. Plaintiffs merely assert

17 that the training program did not adequately "ensure" that Clark

18 and other officers had proper training in these respects. The Court

19 interprets this allegation to mean that the training program

20 contained *at least some* reference to basic information about using

21 the JPX properly, even if that information was not, in retrospect,

22 sufficiently retained by the officers. If such information was

23 communicated during the classroom training in a reasonably

24 understandable form, then Plaintiffs cannot show that the City was

25 "deliberately indifferent" to the need for more training, even if

26 the City did not ultimately "ensure" that Clark had retained the

27 necessary information. If, on the other hand, the training program

28 included essentially *no instruction* regarding the capabilities and

dangers of using the JPX device, or the constitutional implications

of such use, then Plaintiffs could potentially meet the obviousness

standard.[1] However, as pled in the Second Amended Complaint,

Plaintiffs' municipal liability claim for failure to train fails.

To the extent that Plaintiffs assert a municipal liability

claim based on a "custom, policy, or practice of deploying pepper

spray on compliant subjects," "failing to prohibit deployment of a

JPX gun on a subject's face and head area," or "failing to prohibit

the deployment of a JPX gun at a distance of less than five feet,"

Plaintiffs provide no facts supporting these allegations. Without

any prior incidents to demonstrate a custom or practice of using

pepper spray improperly, Plaintiffs would have to rely on an actual

written policy. Plaintiffs cite to no such policy. As a result,

Plaintiffs' allegations here are the kind of "threadbare" factual

pleadings that are insufficient to state a plausible claim.

Therefore, the Court GRANTS the Motion with respect to Plaintiffs'

municipal liability claim, with leave to amend to allege facts

regarding "obvious" deficiencies in the content of the classroom

training program.[2]

2. *Supervisory Liability*

---

[1]Indeed, such a situation would be highly analogous to the hypothetical presented in City of Canton, where the Supreme Court explained that the narrow exception might apply where a police department gave its officers guns to use when apprehending fleeing felons, but failed to give the officers any instruction in the constitutional limitations on the use of deadly force. 489 U.S. at 390 fn. 10.

[2]Because the Court finds that Plaintiffs have pled insufficient facts to state a claim for municipal liability, neither Monique's nor O.G.'s municipal liability claims survive at this stage.

1   A supervisor may be individually liable if he is personally

2   involved in a constitutional injury or where there is a "sufficient

3   causal connection between the supervisor's wrongful conduct and the

4   constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207-08

5   (9th Cir. 2011) (quotation marks and citation omitted). A causal

6   connection exists if the supervisor "set in motion a series of acts

7   by others, or knowingly refused to terminate a series of acts by

8   others, which he knew or reasonably should have known, would cause

9   others to inflict the constitutional injury." Larez v. City of Los

10  Angeles, 946 F.2d 630 (9th Cir. 1991). Liability is imposed for the

11  supervisor's "own culpable action or inaction in the training,

12  supervision, or control of his subordinates," Clay v. Conlee, 815

13  F.2d 1164, 1170 (8th Cir. 1987), or for conduct that showed a

14  "reckless or callous indifference to the rights of others."

15  Bordanaro v. McLeod, 871 F.2d 1151, 1163 (1st Cir. 1989). To impose

16  supervisory liability for failure to train, the supervisor must

17  have been "deliberately indifferent" to the need for "more or

18  different training." Clement v. Gomez, 298 F.3d 898, 905 (9th Cir.

19  2002) (citing City of Canton, 489 U.S. at 389).

20  The Court finds that Plaintiffs have pled insufficient facts

21  to state a plausible claim for supervisory liability for the same

22  reasons explained above: Plaintiffs do not allege that the training

23  program did not include *any* information regarding the

24  constitutional implications of JPX use or the proper and improper

25  methods of deploying it. Therefore, Plaintiffs have not pled facts

26  demonstrating that Coe was "deliberately indifferent" to the need

27  for more training. Therefore, the Court GRANTS the Motion with

28  respect to Plaintiffs' supervisory liability claim against Coe,

14

1  //

2  //

3  //

4  with leave to amend to allege facts regarding "obvious"

5  deficiencies in the content of the classroom training program.[3]

6      C. <u>Seventh Cause of Action: Negligence</u>

7      The seventh cause of action, for negligence, is asserted by

8  Monique, Joseph Sr., Olivia, Gabrielle, Joanna, Alexis, and Joseph

9  Jr. against City, Clark, Velasquez, and Does 1-10. Defendants argue

10  that this claim should be dismissed on behalf of the Family

11  Plaintiffs against Velasquez because Plaintiffs allege no facts

12  that indicate that Velasquez injured the Family Plaintiffs through

13  negligent acts or omissions. Further, Defendants argue that, to the

14  extent this claim is a claim for bystander negligence, it should be

15  stricken as redundant of the twelfth cause of action.

16      First, Plaintiff's negligence claims are not merely redundant

17  of Plaintiffs' bystander negligence claims, which the Court

18  construes as claims for negligent infliction of emotional distress.

19  Those claims are premised on physical injuries that were inflicted

20  *on Monique* and the emotional distress that resulted from the Family

21  Plaintiffs witnessing the infliction of those injuries. Plaintiffs'

22  negligence claim alleges that the officers were negligent in their

23  *direct* interactions with the Family Plaintiffs. Therefore, the

24

25      [3]The Court does not reach Defendants' arguments regarding
26  Coe's qualified immunity defense because the Court dismisses the
  claims against Coe. However, should Plaintiffs amend to state a
27  claim for municipal and supervisory liability, the Court will
  address the qualified immunity defense based on the facts as pled
28  upon amendment. An analysis of whether Coe would be entitled to
  qualified immunity for a claim not yet pled would be premature.

1   Court DENIES Defendants' request to strike this cause of action as
2   redundant.
3   //
4
5       Plaintiffs must base their negligence claim, with regard to
6   acts or omissions that injured the Family Plaintiffs, on "negligent
7   tactics and handling of the incident," "negligent handling of
8   evidence and witnesses," and "negligent communication during the
9   incident," as the other alleged negligent acts injured Monique
10  only. (SAC ¶ 90.) Plaintiffs allege sufficient facts regarding
11  Velasquez's actions to support a plausible negligence claim by the
12  Family Plaintiffs against Velasquez, including allegations that he
13  "prevented" the family from aiding Monique after she was injured,
14  "pulled out his baton in an intimidating manner," "falsely
15  represented to Monique's family members that she was okay and was
16  being taken to jail," and "lied about the incident." (SAC ¶¶ 34,
17  42, 43.) These acts may plausibly have caused emotional harm to the
18  Family Plaintiffs. Therefore, the Court DENIES the Motion with
19  respect to this cause of action.
20      D. Eighth Cause of Action: Violation of Bane Act
21      The eighth cause of action, for violation of the Bane Act,
22  Cal. Civ. Code § 52.1, is asserted by Joseph Sr., Olivia,
23  Gabrielle, Joanna, Alexis, and Joseph Jr. against City, Clark, and
24  Velasquez. The sufficiency of the complaint is challenged only as
25  to City and Velasquez.
26      The Bane Act permits a claim against a defendant who
27  "interferes by threats, intimidation, or coercion, or attempts to
28  interfere by threats, intimidation, or coercion, with the exercise

1  or enjoyment by any individual or individuals of [legal] rights."
2  Cal. Civ. Code § 52.1. In order to state a claim under the Bane
3  Act, where "the use of force was intrinsic to the alleged violation
4  itself, it [does] not also satisfy the additional 'force' or
5  'coercion' element of the statute." Shoyoye v. County of Los
6  Angeles, 203 Cal. App. 4th 947, 960 (2012) (citing Gant v. County
7  of Los Angeles, 765 F.Supp.2d 1238, 1253 (C.D. Cal. 2011)).

8      The Family Plaintiffs premise their Bane Act claim on
9  interference with their rights of "free speech, free expression,
10  free assembly, due process, and to be free from unreasonable search
11  and seizure." (SAC ¶ 95.) Plaintiffs allege that the threat,
12  intimidation, or coercion was accomplished when Velasquez "took out
13  his baton to intimidate the family Plaintiffs in response to their
14  protests over the treatment and shooting of Monique by Clark."
15  (Id.) Plaintiffs allege that the City is vicariously liable for the
16  wrongful acts of Clark and Velasquez. (Id. ¶ 99.)

17      The Court finds that Plaintiffs have pled sufficient facts to
18  maintain their cause of action for violation of the Bane Act.
19  Defendants essentially concede that Plaintiffs have sufficiently
20  alleged the coercion element of their Bane Act claim. (See Motion,
21  Docket No. 42-1, at 12.) However, Defendants argue that Plaintiffs
22  have not sufficiently alleged interference with their
23  constitutional rights.[4]

24
25
26  [4]Defendants strain to analogize this case with Moss v. U.S.
   Secret Service, 572 F.3d 962 (9th Cir. 2009), a viewpoint
27  discrimination case where the court determined that Plaintiffs had
   not stated a claim for interference with their First Amendment
28  rights. The discriminatory intent at issue in that case is not at
   issue here.

1    The Court finds that Plaintiffs have pled sufficient facts to

2    support a Bane Act claim premised on attempted interference with

3    First Amendment rights. The alleged facts indicate that the Family

4    Plaintiffs voiced concerns about the tactics used by Clark and

5    Velasquez and that, in response, Velasquez took out his baton in an

6    intimidating fashion. Defendants argue that it is more plausible

7    that Velasquez took out his baton in order to maintain control over

8    the situation, and therefore that Plaintiffs' claim that this act

9    was intended to silence their protests should be disregarded as

10   implausible. However, Defendants are not free to add their own

11   facts in order to attempt to discredit Plaintiffs' pleadings.

12   Plaintiffs have met their pleading burden, and therefore the Court

13   DENIES the Motion with respect to this cause of action.

14       E. <u>Tenth Cause of Action: Negligent Training and Supervision</u>

15       The tenth cause of action, for negligent training and

16   supervision, is asserted by Monique, Joseph Sr., Olivia, Gabrielle,

17   Joanna, Alexis, and Joseph Jr. against Coe and Does 1-10.[5]

18       Plaintiffs' pleadings are insufficient for this cause of

19   action for the reasons discussed under Plaintiffs' claim for

20   supervisory liability, as this claim is simply a particular form of

21   supervisory liability. In addition, to the extent that Plaintiffs

22   seek to base this claim on the fact that Clark was allowed to carry

23   a JPX gun despite "Clark's failure to provide satisfactory

24   response(s) to the written test given by BPD on the use of the JPX

25   gun" (SAC ¶ 110), Plaintiffs do not indicate why or how Coe should

26

27   _____

       [5]Plaintiffs' pleadings appear to assert this cause of action
28   against the City as well, although they do not indicate as much in
     their heading.

have known either that Clark had missed questions on the written
test or that, because he missed those questions, he was "unfit and
incompetent" to carry a JPX gun. Therefore, the Court GRANTS the
Motion with respect to this cause of action with leave to amend.

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS the Motion in part
and DENIES the Motion in part. Plaintiffs may amend their complaint
to address the deficiencies identified in this Order. Any such
amended complaint must be filed on or before March 7, 2014.

IT IS SO ORDERED.

Dated:February 21, 2014

DEAN D. PREGERSON
United States District Judge