O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE HERNANDEZ, JOSEPH HERNANDEZ, OLIVIA HERNANDEZ, GABRIELLE HERNANDEZ, JOANNA HERNANDEZ, ALEXIS HERNANDEZ, JOSEPH HERNANDEZ JR. AND O.G., a minor by and through her Guardian ad Litem OLIVIA HERNANDEZ, <br><br>　　　　　　　Plaintiffs, <br><br>　v. <br><br>CITY OF BEAUMONT, OFFICER ENOCH CLARK, CORPORAL FRANCISCO VELASQUEZ, JR., CHIEF FRANK COE, <br><br>　　　　　　　Defendants. | Case No. EDCV 13-00967 DDP (DTBx) <br><br> ORDER DENYING DEFENDANTS CITY OF BEAUMONT, CORPORAL FRANCISCO VELASQUEZ, JR., AND CHIEF FRANK COE'S MOTION TO DISMISS PORTIONS OF PLAINTIFFS' THIRD AMENDED COMPLAINT <br><br> (DKT. NO. 55) |

Presently before the Court is Defendants' Motion to Dismiss Portions of Plaintiffs' Third Amended Complaint (the "Motion"). For the reasons stated in this order, the Motion is DENIED.

**I. Background**

Plaintiff Monique Hernandez ("Monique") brings this action, along with many of her family members, against Defendants City of Beaumont ("City"), Officer Enoch Clark ("Clark"), Corporal

Francisco Velasquez Jr. ("Velasquez"), Chief Frank Coe ("Coe"), and Does 1-10 (collectively "Defendants"), alleging various rights violations while Monique was detained by Clark and Velasquez. Plaintiffs Joseph Hernandez Sr. (Monique's father), Olivia Hernandez (Monique's mother), Gabrielle Hernandez (Monique's sister), Joanna Hernandez (Monique's sister), Alexis Hernandez (Monique's sister), and Joseph Hernandez Jr. (Monique's brother) (collectively "Family Plaintiffs") witnessed the acts that are the subject of this complaint and assert their own causes of actions stemming from the incident. O.G. (Monique's minor daughter) is also a plaintiff in this action.

Plaintiffs bring twelve different causes of action in their Third Amended Complaint ("TAC"). The Court previously found all of Plaintiffs' causes of action to be sufficiently pled, with the exception of Plaintiffs' fifth claim, for municipal and supervisory liability, and their tenth claim, for negligent supervision and training. (See Docket No. 50.) In the Motion, Defendants challenge the sufficiency of the pleadings only as to these two causes of action. (See Docket No. 55.) Therefore, the Court includes here only those facts that are relevant to the municipal and supervisory liability claims.[1]

Plaintiff Monique Hernandez suffered severe injuries after she was shot with a JPX pepper spray gun at close range by Clark, a police officer with the Beaumont Police Department ("BPD"), in the presence of Velasquez, another BPD officer. (See TAC, Docket No.

---

[1] The Court's prior order ruling on Defendants' motion to dismiss the Second Amended Complaint contains a fuller recitation of all of the underlying facts in this case. (See Docket No. 55, pp. 1-5.)

2

51, ¶¶ 20-45.) Plaintiffs allege that "[t]he JPX gun shoots out pepper spray liquid at 405 miles per hour. The muzzle velocities of JPX Jet Protector rounds provided to BPD range from 550 feet per second to 1000 feet per second." (Id. ¶ 35.) Plaintiffs allege that a reasonably trained officer would know that firing a JPX gun at a distance of less than five feet would cause serious bodily injury. (Id.)

Plaintiffs allege that the training that Clark and other BPD officers received on the JPX was inadequate. (Id. ¶ 36.) The training allegedly consisted of "a one-time classroom presentation on the JPX followed by a written test." (Id.) Plaintiffs contend that any reasonable officer who either saw the JPX deployed or deployed it himself would know that it "functions like a firearm and has firearm capabilities with regard to velocity and force" and "does *not* function like a typical pepper spray device." (Id.) Plaintiffs allege that Clark did not have any hands-on training in the use of the JPX. (Id.)

Plaintiffs allege that none of the BPD officers "were trained on the constitutional limitations or implications on the use of the JPX in that [they] were instructed by Defendant City that the use of the JPX was 'not a use of force' in contravention of clearly established law against the use of chemical agents against compl[ia]nt subjects or subjects who were passively resisting." (Id.) Plaintiffs further allege that the City and Coe failed to train BPD officers on "the circumstances when a JPX gun can be deployed without violating constitutional rights." (Id. ¶ 78.)

**II. Legal Standard**

3

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

Defendants City and Coe seek dismissal only as to Plaintiffs' claims for municipal and supervisory liability and for negligent training and supervision. Defendant Clark does not seek dismissal of any claims and has filed an answer to the TAC. (See Docket No. 60.)

A. Municipal Liability

To state a claim for municipal liability against an entity defendant, a plaintiff must allege that the entity itself caused the violation through a constitutionally deficient policy, practice or custom. Monell v. Dep't of Social Services, 436 U.S. 658 (1978).

In light of Iqbal, bare allegations are no longer sufficient to state a claim for municipal liability. Instead, a plaintiff must identify the training or hiring practices and policies that she alleges are deficient, explain how such policy or practice was deficient, and explain how such a deficiency caused harm to the plaintiff. Young v. City of Visalia, 687 F.Supp.2d 1141, 1149-50 (E.D. Cal. 2009). In other words, a plaintiff must allege "specific facts giving rise to a plausible Monell claim" instead of "formulaic recitations of the existence of unlawful policies, customs, or habits." Warner v. County of San Diego, 2011 WL 662993 (S.D. Cal. 2011).

Plaintiffs' municipal liability claim is an inadequate training claim. In order to state a claim for inadequate training, a plaintiff must show: (1) a violation of a constitutional right; (2) a training policy that "amounts to deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact;" and (3) the constitutional injury would have been avoided with proper training.

5

Young v. City of Visalia, 687 F. Supp. 2d 1141, 1148 (E.D. Cal. 2009) (citing Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007)).

In order to show deliberate indifference in the failure to train context, a "pattern of injuries" is "ordinarily necessary to establish municipal culpability and causation." Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 409 (1997). Municipal liability normally does not attach to a single incident. "[A]dequately trained officers occasionally make mistakes; the facts that they do so says little about the training program or the legal basis for holding the city liable." City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989). However, the Supreme Court has left open the possibility that under limited circumstances, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390.

Plaintiffs sufficiently plead a violation of Monique's Fourth Amendment rights, satisfying the first requirement for their failure to train claim. With regard to the deliberate indifference requirement, Plaintiffs cite one prior lawsuit, Valenzuela v. City of Beaumont, which was filed against the City for excessive force in the use of a different pepper spray gun device with some similarities to the JPX. (See TAC ¶ 77.) However, a single prior lawsuit involving a different pepper spray device is insufficient to support a finding that the City was "deliberately indifferent" to the need for more training on the JPX, especially where there is

6

no indication that the claims in the prior action were substantiated or that the plaintiffs there were successful. See Righetti v. Cal. Dept. of Corr. & Rehab., 2013 WL 1707957, at *1 (N.D. Cal. 2013). As a result, Plaintiffs must premise their claim on the narrow exception allowing a failure to train claim to proceed where the need for additional training is "so obvious" that the failure to provide that training amounts to deliberate indifference to the rights of those that are likely to come into contact with the City police.

Plaintiffs' TAC corrects the deficiencies the Court identified in the Second Amended Complaint such that Plaintiffs have now stated a plausible claim for municipal liability. Plaintiffs allege that the "only training" on the JPX "consisted of a one-time classroom presentation ... followed by a written test." (TAC ¶ 36.) Plaintiffs allege that "the one-time classroom presentation did not include any information regarding the constitutional implications or limitations on the use of the JPX, nor did the training include when and how BPD officers can safely deploy the JPX." (Id. ¶ 79.) Further, Plaintiffs allege that BPD officers were told that "the use of the JPX was 'not a use of force.'" (Id. ¶ 36.)

Defendants are correct that neither the fact that the training was only a single day, nor the fact that the officers did not receive "hands-on" training on the JPX, is sufficient to rise to the level of deliberate indifference. However, Plaintiffs now plead facts, as cited above, that suggest that the JPX training included incomplete and/or blatantly inaccurate information about the constitutional implications of using a JPX and the level of force that use of the JPX would constitute. Plaintiffs further allege

7

that it would have been obvious to any reasonable officer who fired a JPX (or saw one fired) that it did not function like a typical pepper spray device, but was much more powerful than that. (Id.) It would appear, then, that either the supervising officers gave JPX guns to their field officers without ever having fired the device themselves, or they had seen it fired but failed to provide any information during the training program on the obviously dangerous nature of the device. Either way, the supervising officers, and thus the City, can be said to have been deliberately indifferent to the need for training on the dangers and constitutional implications of using the JPX because "the need for [this] training is so obvious." City of Canton, 489 U.S. at 390. Further, Plaintiffs allege that the City was "on notice by the JPX manufacturer's warnings that deployment at a distance of less than five feet will result in serious injury or death." (TAC ¶ 81.) The absence of obviously necessary information, therefore, is sufficient to support Plaintiffs' municipal liability claim.[2]

To the extent that Plaintiffs assert a municipal liability claim based on a "custom, policy, or practice of deploying pepper spray on compliant subjects," "failing to prohibit deployment of a JPX gun on a subject's face and head area," or "failing to prohibit the deployment of a JPX gun at a distance of less than five feet"

---

[2] Plaintiffs cite some of the allegations made by the City in it Third Party Complaint against the manufacturers of the JPX in support of their theory of the case. The Court considers those facts only to the extent that they are actually included in the TAC. The Court, however, does not accept all of the allegations in the Third Party Complaint as true in deciding the Motion. Whether the City is ultimately liable to Plaintiffs may depend, at least in part, on what the City was told by the manufacturer, but the presence of such allegations in the Third Party Complaint does not alter the Court's analysis of this Motion.

8

(id. ¶ 76.), Plaintiffs provide no facts supporting these allegations. Without any prior incidents to demonstrate a custom or practice of using pepper spray improperly, Plaintiffs would have to rely on an actual written policy. Plaintiffs cite to no such policy. As a result, Plaintiffs' allegations here are the kind of "threadbare" factual pleadings that are insufficient to state a plausible claim. Therefore, the Court DENIES the Motion with respect to Plaintiffs' municipal liability claim, to the extent that it is based on inadequate training; however, to the extent that Plaintiffs attempt to assert a Monell claim on other grounds, the TAC is insufficient.

B. Claims Against Chief Coe

A supervisor may be individually liable if he is personally involved in a constitutional injury or where there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation marks and citation omitted). A causal connection exists if the supervisor "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991). Liability is imposed for the supervisor's "own culpable action or inaction in the training, supervision, or control of his subordinates," Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987), or for conduct that showed a "reckless or callous indifference to the rights of others." Bordanaro v. McLeod, 871 F.2d 1151, 1163 (1st Cir. 1989). To impose supervisory liability for failure to train, the supervisor must

have been "deliberately indifferent" to the need for "more or different training." Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (citing City of Canton, 489 U.S. at 389).

As the chief of the BPD, Plaintiffs allege that Coe "possessed the power and the authority and [was] charged by law with the responsibility to enact policies and to prescribe rules and practices concerning the operation of the BPD." (TAC ¶ 16.) The Court finds that Plaintiffs have pled sufficient facts to state plausible claims for supervisory liability and for negligent training against Coe for the same reasons their Monell claim is sufficient. Therefore, the Court DENIES the Motion with respect to Plaintiffs' claims against Coe.

### C. Coe's Qualified Immunity Defense

Qualified immunity is "an entitlement not to stand trial or face the burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001). To overcome a defendant's assertion of a qualified immunity defense, a plaintiff must show (1) the defendant's conduct itself amounted to a constitutional violation and (2) the right was "clearly established" at the time the conduct occurred. Id. However, the Court "do[es] not need to find closely analogous case law to show that a right is clearly established" where it should have been "readily apparent" that the defendant's conduct would violate constitutional rights. Bryan v. MacPherson, 630 F.3d 805, 833 (9th Cir. 2010) (citing Oliver v. Fiorino, 586 F.3d 898, 907 (11th Cir. 2009)).

Here, in determining whether Plaintiffs have stated a claim for municipal and supervisory liability, the Court has already determined that Plaintiffs have pled facts demonstrating that Coe's

10

conduct in failing to adequately train BPD officers in the constitutional implications of using the JPX amounted to a constitutional violation, satisfying the first prong of the Saucier test. The Court also determined that Coe and the City could be liable for the failure to train because the need for such training was "so obvious" that it amounted to deliberate indifference. This amounts to essentially the same thing as finding that it should have been "readily apparent" that the failure to train would amount to a violation of constitutional rights. Therefore, the Court finds that Coe is not entitled to qualified immunity.

D. O.G.'s Municipal and Supervisory Liability Claims

O.G. asserts claims against the City and Coe arising from her substantive due process right to be free from interference with her relationship with her mother. Defendants argue that Plaintiffs have not pled sufficient facts to support a plausible claim and that Coe is entitled to qualified immunity because the right was not clearly established.

The Ninth Circuit recognizes that a "constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." Smith v. City of Fontana, 818 F.2d 1411, 1418 (9th Cir. 1987) (rev'd on other grounds). The deprivation of the parent/child relationship need not be a total deprivation in order to sustain a claim. See Ovando v. City of Los Angeles, 92 F. Supp. 2d 1011, 1021 (C.D. Cal. 2000); see also Doe v. Dickenson, 615 F. Supp. 2d 1002, 1014 (D. Ariz. 2009). "[I]njury to a parent's mental capacity can infringe on a child's ability to

11

create and maintain the emotional bond protected by the Fourteenth Amendment." Ovando, 92 F. Supp. 2d at 1021.

Here, Plaintiffs plead that Monique "has permanent mental and emotional distress" and "traumatic brain injury." (TAC ¶ 69.) Given the severe physical injuries and potentially traumatizing events that Monique endured, it is certainly plausible that she suffered permanent psychological damage. Plaintiffs allege that "O.G. has ... been deprived of ... love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, and guidance" from Monique's "permanent ... disabilities." (Id. ¶ 72.) While there remains a question as to whether the severity of the mental and emotional injuries to Monique is sufficient to rise to the level of interference with O.G.'s rights, "the degree to which [a] parent has suffered impairment at the hands of the State" is "a fact question to be resolved either at trial or ... through summary judgment." Ovando, 92 F. Supp. 2d at 1021. Therefore, the Court DENIES the Motion with respect to this claim against the City and Coe, as Plaintiffs have pled a plausible claim.

Further, because Coe is not entitled to qualified immunity for the underlying constitutional violation giving rise to O.G.'s derivative claim, the Court finds that Coe is not entitled to qualified immunity here either. It is act of failing to adequately train BPD officers in the use of the JPX that led to Monique's injury and, derivatively, to impairment of O.G.'s relationship with Monique. For the reasons stated above, then, Coe is not entitled to qualified immunity for this claim.

///

**IV. Conclusion**

    For the foregoing reasons, the Court DENIES the Motion.

IT IS SO ORDERED.

Dated: April 28, 2014

DEAN D. PREGERSON
United States District Judge

13