O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MONIQUE HERNANDEZ, JOSEPH HERNANDEZ, OLIVIA HERNANDEZ, GABRIELLE HERNANDEZ, JOANNA HERNANDEZ, ALEXIS HERNANDEZ, JOSEPH HERNANDEZ JR. AND O.G., a minor by and through her Guardian ad Litem OLIVIA HERNANDEZ, | ) ) ) ) ) ) ) ) ) ) | Case No. EDCV 13-00967 DDP (DTBx)  **ORDER DENYING THIRD-PARTY DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**  [Dkt. No. 84] |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| CITY OF BEAUMONT, OFFICER ENOCH CLARK, CORPORAL FRANCISCO VELASQUEZ, JR., CHIEF FRANK COE, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Presently before the Court is Third-Party Defendant Piexon AG's motion to dismiss the third party complaint for lack of personal jurisdiction (the "Motion"). (Docket No. 84.) For the reasons stated in this Order, the Motion is DENIED.

**I. Background**

The underlying action is an excessive force case. Monique Hernandez ("Monique"), along with seven of her family members

1   (collectively, "Plaintiffs"), filed an action against the City of
2   Beaumont ("City"), Officer Enoch Clark ("Clark"), Corporal
3   Francisco Velasquez, Jr. ("Velasquez"), and Chief Frank Coe
4   ("Coe"), alleging various civil rights violations. (Third Amended
5   Complaint ("TAC"), Docket No. 51.) During the course of an arrest,
6   Clark shot Monique with a JPX Jet Protector pepper spray gun
7   ("JPX") at close range, causing severe eye injuries. (<u>Id.</u> ¶¶
8   20-45.) Plaintiffs allege that "[t]he JPX gun shoots out spray
9   liquid at 405 miles per hour. The muzzle velocities of JPX Jet
10  Protector rounds provided to [the Beaumont Police Department] range
11  from 550 feet per second to 1000 feet per second." (<u>Id.</u> ¶ 35.)
12  Plaintiffs further allege that Clark and other Beaumont Police
13  Department officers were not adequately trained on the use of the
14  JPX. (<u>Id.</u> ¶ 36.)

15      The City filed a Third-Party Complaint ("TPC") against Third
16  Party Defendants Piexon AG ("Piexon"), IBS Sigma Inc. ("IBS"), and
17  Bart Bacolini ("Bacolini"). (Docket No. 46.) Piexon is a Swiss
18  company that manufactures a line of personal defense products,
19  including the JPX. (TPC ¶ 12; Fleishhauer Aff. ¶ 3.) IBS is a
20  Canadian company that markets and distributes police and security
21  products, including the JPX. (TPC ¶ 13.) Bacolini is a resident of
22  California who received training from Piexon to prepare him to
23  train law enforcement officers on the use of the JPX. (Fleischhauer
24  Aff. ¶ 36; Decl. Gazzo ¶ 15.) Bacolini also owns and operates an
25  affiliate business, Bacolini Enterprises, which distributes,
26  markets, and conducts training for the JPX. (TPC ¶ 14.) In March
27  2010, Piexon's Vice President of International Sales, Zac Almeis,
28  attended the 2010 Trexpo West Police Expo in Long Beach,

California, where he trained Bacolini and provided him with Piexon's JPX training and user materials. (Gazzo Decl. ¶¶ 12-15; Fleischhauer Aff. ¶ 18.) On March 31, 2010, Bacolini received certification from the Piexon Training Academy indicating that he had completed the required training as well as passed the written and oral exams on the use and instruction of the JPX. (Fleischhauer Aff. ¶ 37.) This certification confirmed that Bacolini could certify others on the use of JPX. (Id. ¶ 38.)

In April 2010, City agreed to purchase the JPX from IBS. (TPC ¶ 31.) On May 20, 2010, Bacolini, as an authorized agent of IBS, hand delivered ten JPX devices to City's Police Department. (TPC ¶ 32.) On that same day, Bacolini trained City's police officers, exclusively relying on, referring to, and incorporating written training and user materials that Piexon provided. (TPC ¶ 33; Decl. Gazzo ¶ 16; Decl. Thuilliez ¶ 3, Exh. A.) Bacolini held two training sessions: one session to certify officers on the use of JPX and another to certify some officers so that they, in turn, could train others. (TPC ¶ 34.) The City alleges nine causes of action in the TPC: (1) Negligence; (2) Misrepresentation; (3) Strict Liability; (4) Failure to Warn; (5) Breach of Warranties; (6) Indemnification; (7) Contribution; (8) Apportionment; and (9) Declaratory Relief. City alleges that this Court has personal jurisdiction over Piexon because Piexon solicited and transacted business for the sale of the JPX in California and put products, including the JPX, into the stream of commerce, specifically targeting consumers in California and directly selling products to California law enforcement agencies. (TPC ¶¶ 3-4.)

1     Piexon now moves to dismiss the TPC for lack of personal

2 jurisdiction pursuant to Fed. R. Civ. 12(b)(2). (Docket No. 84.)

3 **II. Legal Standard**

4     Federal Rule of Civil Procedure 12(b)(2) provides that a court

5 may dismiss a suit for lack of personal jurisdiction. The plaintiff

6 has the burden of establishing that jurisdiction exists. See Sher

7 v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). Where, as here,

8 the motion is based on written materials rather than an evidentiary

9 hearing, "the plaintiff need only make a prima facie showing of

10 jurisdictional facts." Caruth v. International Psychoanalytical

11 Ass'n, 59 F.3d 126, 128 (9th Cir. 1977); Pebble Beach Co. v. Caddy,

12 453 F.3d 1151, 1154 (9th Cir. 2006). "Although the plaintiff cannot

13 simply rest on the bare allegations of its complaint,

14 uncontroverted allegations in the complaint must be taken as true."

15 Schwarzenegger v. Fred Martin Motor Co., 374 D.3d 797, 797 (9th

16 Cir. 2004) (internal quotations and citation omitted). Conflicts

17 between parties over statements contained in affidavits must be

18 resolved in the plaintiff's favor. Id.

19     District courts have the power to exercise personal

20 jurisdiction to the extent authorized by the law of the state in

21 which they sit. Fed. R. Civ. P. 4(k)(1)(A); Panavision Int'l, L.P.

22 v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). Because

23 California's long-arm statute authorizes personal jurisdiction

24 coextensive with the Due Process Clause of the United States

25 Constitution, see Cal. Civ. Code § 410.10, this Court may exercise

26 personal jurisdiction over a nonresident defendant when that

27 defendant has "at least 'minimum contacts' with the relevant forum

28 such that the exercise of jurisdiction 'does not offend traditional

4

notions of fair play and substantial justice.'" <u>Schwarzenegger</u>, 374 F.3d 797, 800-01 (citing <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)). The contacts must be of such a quality and nature that the defendants could reasonably expect "being haled into court there." <u>World-Wide Volkswagen v. Woodson</u>, 444 U.S. 286, 297 (1980).

There are two types of personal jurisdiction: general and specific. <u>Reebok Int'l Ltd. v. McLaughlin</u>, 49 F.3d 1387, 1391 (9th 1995). A court may exercise general personal jurisdiction over a defendant when the defendant's contacts are "so continuous and systematic as to render them essentially at home in the forum state." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S.Ct. 2846, 2851 (2011).

Specific personal jurisdiction may be found when the cause of action arises out of the defendant's contact or activities in the forum state. <u>See</u> <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 620 (9th Cir. 1991). The Ninth Circuit has set forth the following three-pronged test to determine whether specific personal jurisdiction exists: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." <u>Lake v. Lake</u>, 817 F.2d 1416, 1421 (9th Cir. 1986). If the plaintiff succeeds in establishing the first two prongs, the burden then shifts to the defendant to "present a

compelling case" that the court's assertion of jurisdiction would be unreasonable. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476–78 (1985).

**III. Discussion**

Piexon moves to dismiss City's claims for lack of general and specific jurisdiction. City, in its opposition, does not argue that the Court has general personal jurisdiction over Piexon. Therefore, the only issue for the Court to resolve is whether the Court has specific personal jurisdiction over Piexon.

A. <u>Agency</u>

Plaintiff first argues that the usual personal jurisdiction analysis should be bypassed here because Bacolini acted as Piexon's agent. For purposes of personal jurisdiction, the actions of an agent are attributable to the principal. <u>Sher</u>, 911 F.2d at 1362. However, the Supreme Court held that the Ninth Circuit's formulation of the "agency" test did not satisfy the requirements of due process, finding an inquiry into the "importance" of a subsidiary is not a valid test, as it "will always yield a pro-jurisdiction answer." <u>Daimler AG v. Bauman</u>, 134 S.Ct. 746, 759 (2014). The City argues Bacolini should be considered "sufficiently important" to Piexon's activities to be an agent of Piexon. The City points to a letter written by Piexon's executives where they refer to Bacolini as "our training instructor" to prove that Bacolini is an agent of Piexon. (Thuilliez Decl., Exh. B1.) However, Bacolini is not an employee of Piexon; had no contractual relationship with Piexon; and Piexon did not, and could not, direct or require Bacolini to instruct others in the use of the JPX. (Fleischhauer Aff. ¶¶ 39–41.) Moreover, the City, in its Motion for

determinating settlement to be in good faith, recognized Bacolini
as the West Coast Sales Manager for IBS, not for Piexon. (Docket
No. 88-1, p.4.) Based on these facts, the Court finds that Bacolini
is not an agent of Piexon.

    B. <u>Specific Jurisdiction</u>

      1. *Purposeful Availment*

The first prong is satisfied by either purposeful availment or
purposeful direction.[1] These are two distinct concepts: "A
purposeful availment analysis is most often used in suits sounding
in contract. A purposeful direction analysis, on the other hand, is
most often used in suits sounding in tort." <u>Schwarzenegger</u>, 374
F.3d at 802 (internal citations omitted). City seeks to employ the
Ninth Circuit's three-part "Calder-effects" test, which applies to
a purposeful direction analysis. <u>Calder v. Jones</u>, 465 U.S. 783
(1984). However, the purposeful direction analysis applies only to
intentional torts. See <u>Holland Am. Line Inc. v. Wartsila N. Am.,
Inc.</u>, 485 F.3d 450, 460 ("[I]t is well established that the <u>Calder</u>
test applies only to intentional torts, not to the breach of
contract and negligence claims); <u>see also Bancroft & Masters, Inc.
v. Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1088 (9th Cir. 2000)
(emphasizing that the <u>Calder</u> test requires the defendant to
individually and wrongfully target the plaintiff). Here, the City's
claims are based on negligence and products liability, not
intentional torts. Thus, the Court will apply the more general
purposeful availment analysis.

---

[1]The parties dispute which test should apply. Piexon argues
the Court should use a purposeful availment analysis. The City, on
the other hand, argues for a purposeful direction analysis.

1    A defendant purposefully avails itself to a forum state when
2    that defendant "perform[s] some type of affirmative conduct which
3    allows or promotes the transaction of business within the forum
4    state." Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195
5    (9th Cir. 1988). City argues that Piexon is subject to personal
6    jurisdiction because it placed products, including the JPX, into
7    the stream of commerce, and specifically targeted consumers in
8    California. A foreign corporation's "placing good[s] into the
9    stream of commerce 'with the expectation that they will be
10   purchased by consumers within the forum State" may justify that
11   state's exercise of specific jurisdiction over the corporation. J.
12   McIntyre Mach., Ltd. v. Nicastro, 131 S.Ct. 2780, 2783 (2011)
13   (quoting World-Wide Volkswagen Corp., 444 U.S. at 298). This
14   "transmission of goods permits the exercise of jurisdiction only
15   where the defendant can be said to have targeted the forum; as a
16   general rule, it is not enough that the defendant might have
17   predicted that its goods will reach the forum State." Id.

18   Piexon argues that it has not availed itself of the benefits
19   and privileges of the forum state to warrant being subject to
20   personal jurisdiction because it has no office, factory, employees,
21   or presence in California at all. (Fleischhauer Aff. ¶¶ 5-9.) It
22   did not directly market or sell any products to the City (IBS, the
23   distributor, did), nor did it train the City's police officers.
24   (Id. ¶¶ 22, 24-25.) Basically, Piexon argues it has had no contact
25   with the forum state that would satisfy the purposeful availment
26   prong.

27   The Court agrees with Piexon that several of the contacts that
28   the City contends establish personal jurisdiction over Piexon are

8

1   insufficient to satisfy the "purposeful availment" test. First, the
2   City claims that Piexon directly advertised to City's Police
3   Department Chief Coe. According to Coe, he received a packet
4   addressed to him containing advertisement cards from manufacturers
5   and vendors participating in a local exposition, of which one card
6   advertised Piexon's JPX. While this may be true, it does not
7   support City's contention that Piexon intentionally advertised to
8   City's Police Department and thus does not support finding personal
9   jurisdiction. See Holland Am. Line Inc., 485 F.3d at 460 ("Nor do
10  any print advertisements that incidentally may have made their way
11  to [the forum state] support a finding of jurisdiction without more
12  substantial evidence of contacts with the state.").

13      The City also argues that Piexon has specifically targeted the
14  United States by operating a website; obtaining a U.S. Patent and
15  registering a trademark; participating in the 2014 International
16  Association of Chiefs of Police Conference in Orlando, Florida; and
17  possibly retaining a U.S. insurance policy that "presumably covers
18  Piexon's operations in the United States." Again, while this may
19  all be true, specific jurisdiction requires that the non-resident
20  defendant target the forum *state* and not the United States as a
21  whole. Secondly, with regards to the website that the City alleges
22  is in English and has links to articles on the use of its products
23  in Texas, Louisiana, and Florida, the Ninth Circuit has held "mere
24  web presence is insufficient to establish personal jurisdiction."
25  Holland Am. Line Inc., 485 F.3d at 460 (finding a foreign
26  manufacturer's passive website that simply provides information on
27  its various products and redirects potential customers to the
28  appropriate subsidiary was not enough for purposeful availment).

1    However, there is one contact between Piexon and the state of

2    California that is central to the City's complaint. The City argues

3    that Piexon made sufficient contact with the forum state when its

4    Vice-President of International Sales, Zac Almeis, trained Bacolini

5    at the 2010 Trexpo West Police Expo in Long Beach, California.

6    While the Court agrees with Piexon that an executive's mere

7    presence at a tradeshow is insufficient to establish jurisdiction

8    in California, the executive's mere presence is not what is at

9    issue in the present case. The executive took the affirmative step

10   in training Bacolini, a California resident, on the use of the JPX

11   for the purpose of preparing Bacolini to train others on use of the

12   device.[2] Following this training, Bacolini received certification

13   from the Piexon Training Academy indicating that he had completed

14   the required training and could train others on the use of JPX

15   pursuant to Piexon's training guidelines. (Fleischhauer Aff. ¶ 37-

16   38.) Almeis provided Bacolini with Piexon's training materials on a

17   thumb drive containing electronic copies of Piexon's JPX training

18   and user materials. (Decl. Gazzo ¶¶ 12-15; Fleischhauer Aff. ¶ 18.)

19   Bacolini, in turn, trained the City's officers. (TPC ¶ 33; Decl.

20   Gazzo ¶ 16; Decl. Thuilliez ¶ 3, Exh. A.) Where the City's alleged

21   negligence claim is based, at least in part, on "inadequate

22   training, instruction, and warning of the inherently dangerous

23   propensities of the JPX" (TPC ¶ 53), the issue of whether Piexon,

24   through Almeis, provided inadequate training to Bacolini is

25

26        [2]At the hearing on the Motion, the parties represented that
     the training lasted a day to a day and a half. This suggests that
27   the training was intended to be comprehensive and further supports
     the strength of the connection between Piexon's forum-related
28   activity and the alleged injuries in this action.

directly related to Piexon's contact with Bacolini, which occurred
in California. Further, presumably Almeis, and therefore Piexon,
was aware of the likelihood that Bacolini would use his training to
train law enforcement officers on the proper use of the JPX;
indeed, this was the entire purpose of Almeis training Bacolini.
Where Piexon knew that officers in California would be trained on
the use of a potentially dangerous pepper spray weapon, and that
such training would be based on training and information provided
by Piexon, Piexon should expect that any deficiencies in its
training would subject it to suit in the very forum where that
training took place.[3] Therefore, the Court finds that the sole
contact of Piexon training Bacolini in California is sufficient to
satisfy the purposeful availment requirement.

        2. "*But For" Causation*

    The second prong of the test requires that the asserted claim
arises out of the defendant's contacts with the forum state.
Panavision, 141 F.3d at 1322. This requirement is measured in terms

_____

        [3]The conclusion is supported by Supreme Court dicta. In
Helicopteros, the Supreme Court did not find a Colombian
corporation's contacts with the state of Texas to be sufficient to
satisfy purposeful availment in a wrongful death action arising
from a helicopter crash. The court stated that the brief presence
of the defendant's employees in Texas for the purpose of attending
pilot training sessions did not enhance the nature of the
defendant's contacts with Texas because the training was a part of
the package of goods and services and since these purchases were
not related to the cause of action, the court could not exercise
general jurisdiction. Helicopteros Nacionales de Colombia, S.A. v.
Hall, 466 U.S. 408, 418 (1984). "If, however, the applicable
substantive law required that negligent training of the pilot was a
necessary element of a cause of action for pilot error, or if the
respondents had simply added an allegation of negligence in the
training provided for the [ ] pilot, then presumably the Court
would concede that the specific jurisdiction of the [forum state]
was applicable." Id. at 427 (Brennan, J., dissenting). Here, the
City has specifically alleged negligent training. This is precisely
the situation Brennan discussed in his dissenting opinion.

of "but for" causation. <u>Bancroft & Masters</u>, 233 F.3d at 1088. A plaintiff must demonstrate that it would have no need for a judicial intervention but for the defendant's forum-related activities. <u>See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,</u> 145 F.Supp.2d 1168, 1176 (N.D. Cal. 2001).

Here, the City's negligence claims are partially based on Piexon's breach of duty to train, instruct, and warn Bacolini (and, by extension, the City) of the inherently dangerous propensities, including the specific risk of eye penetration injury from short range JPX deployment. (TPC ¶ 51.) Piexon argues that it did not sell the JPX directly to the City, nor did it specifically train Officers Clark or any other City officer on the use of the JPX. (Fleischhauer Aff. ¶¶ 22, 24-25.) However, Piexon's Vice President of International Sales, Zac Almeis, attended the 2010 Trexpo West Police Expo in Long Beach, California where he trained Bacolini and provided him with training materials. (Decl. Gazzo ¶¶ 12-14; Fleischhauer Aff. ¶ 18.) Bacolini, in turn, provided two live training sessions at the City's Police Department, exclusively relying on, referring to, and incorporating written training and user materials that Piexon provided. There is no indication that City officers were otherwise trained on the use of the JPX. Thus, the Court finds sufficient "but for" causation, as both the officers' training and the materials they received ultimately came from Piexon's contact with the forum state in training Bacolini.

        3. *Reasonableness*

    Because City has satisfied the first two prongs, the burden shifts to Piexon to rebut the presumption that jurisdiction is reasonable by presenting a compelling case that specific personal

jurisdiction would be unreasonable. <u>Burger King</u>, 471 U.S. at 477.
To determine reasonableness, the Court considers: (1) the extent of
purposeful interjection into the forum state; (2) the burden on the
defendant; (3) the conflict with the sovereignty of the defendant's
state; (4) the forum state's interest in the suit; (5) the most
efficient judicial resolution of the dispute; (6) the convenience
and effectiveness of relief for the plaintiff; and (7) the
existence of an alternative forum. <u>Id.</u> at 475. All seven factors
must be weighed and no single factor is dispositive. <u>Ziegler v.
Indian River Cnty.</u>, 64 F.3d 470, 475 (9th Cir. 1995).

The first factor is the extent of purposeful interjection into
the forum state. "Even if there is sufficient 'interjection' into
the state to satisfy the [purposeful availment prong], the degree
of interjection is a factor to be weighed in assessing the overall
reasonableness of jurisdiction under the [reasonableness prong]."
<u>Core-Vent Corp. v. Nobel Indus. AB</u>, 11 F.3d 1482, 1488 (9th Cir.
1993) (holding modified by <u>Yahoo!</u>, 433 F.3d 1199 (9th Cir. 2006))
(brackets in original) (quoting <u>Ins. Co. of N. Am. v. Marina Salina
Cruz</u>, 649 F.2d 1266, 1271 (9th Cir. 1981)). <u>But see Roth</u>, 942 F.2d
at 623 (degree of interjection analysis and purposeful availment
inquiry redundant). Here, again, Piexon's Vice President of
International Sales's contacts are imputed to Piexon for purposes
of determining jurisdiction. <u>Sher</u>, 911 F.2d 1357, 1362 (9th Cir.
1990) ("For purposes of personal jurisdiction, the actions of an
agent are attributable to the principal."). The extent of Piexon's
interjection into California has not been great, however. This
factor does not weigh strongly in either direction.

The second factor is the burden on the defendant in defending in the forum state. Where "a defendant 'has done little to reach out to the forum state,' the burden of defending itself in a foreign forum militates against exercising jurisdiction." Fed. Deposit Ins. Corp. v. British-American Ins. Co., Ltd., 828 F.2d 1439, 1444 (9th Cir. 1987) (quoting Ins. Co. of N. Am., 649 F.2d at 1272.). The burden of a defendant is increased when it is ordered to defend itself in the foreign legal system of another country. Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal. Solano Cnty., 480 U.S. 102, 114 (1987). The City argues that the burden on Piexon to litigate the suit in California is not heavy because "[i]n this era of fax machines and discount travel, requiring a [foreign] partnership to defend itself in California . . . would not be so unreasonable as to violate due process." Sher, 911 F.2d at 1365. The City contends that if an executive can fly to California to sell weapons and train individuals on their use, then it can require the same executive to fly to California for trial. Piexon counters that it is a resident and corporate citizen of Switzerland with few contacts in California and the fact that international flights exist should not be a consideration in weighing this defendant's burden. While the Court recognizes the burden of a Swiss company defending itself in the foreign courts of California, Piexon has not presented to the Court unique circumstances that would tip the scales more than any other foreign defendant. Nonetheless, the Court finds there is a burden on Piexon; thus, this factor weighs slightly against jurisdiction.

The third factor is the extent of conflict with the sovereignty of the defendant's state. As a principle matter, "a

14

foreign state presents a higher sovereignty barrier than another
state within the United States." <u>Fed. Deposit Uns. Corp.</u>, 828 F.2d
at 1444. Thus, "great care and reserve should be exercised when
extending our notions of personal jurisdiction into the
international field." <u>Asahi Metal Indus.</u>, 480 U.S. at 115. The City
argues that Piexon should not be permitted to "hide behind Swiss
borders" while deriving commercial benefits from having a
registered patent and trademark. The Court cannot find support and
the City has not provided case law to support the connection
between having a registered patent or trademark and a potential
conflict with the sovereignty of the defendant's state. Therefore,
this factor weighs against jurisdiction.

The fourth factor is the forum state's interest in
adjudicating the dispute. "California maintains a strong interest
in providing an effective means of redress for its residents who
are tortiously injured." <u>Core-Vent</u>, 11 F.3d at 1489 (internal
quotation omitted). The City argues that California has a strong
interest in ensuring the safety of its citizens, especially since
Piexon's products, including the JPX, are ultimately sold to
California law enforcement agencies. Further, the JPX is a
potentially dangerous weapon; Piexon could reasonably have foreseen
that its alleged failure to provide adequate training to Bacolini
on proper use of the device might result in serious injury to
California residents where an inadequately trained law enforcement
officer deployed the weapon in a way that caused harm. This favor
weighs in favor of jurisdiction.

The fifth consideration is the efficiency of the forum. "In
evaluating this factor, we have looked primarily at where the

witnesses and the evidence are likely to be located." <u>Core-Vent</u>, 11 F.3d at 1489. Piexon argues that efficient resolution of the product defect claim is not dependent on the adjudication of the underlying civil rights action. However, the alleged failure to warn of the dangerous propensities of the JPX claim will rely heavily on witnesses and evidence located in California, specifically forum-resident Bacolini and documents pertaining to the training received. Further, evidence as to the extent of damage caused by any product defect or inadequate training is located in California, where the underlying injury giving rise to this action occurred. Thus, this factor weighs in favor of jurisdiction.

The sixth factor is the plaintiff's interest in convenient and effective relief. <u>Sinatra</u>, 854 F.2d at 1200. "Neither the Supreme Court nor our court has given much weight to inconvenience to the plaintiff." <u>Core-Vent</u>, 11 F.3d at 1490. It will clearly be more convenient for the City to try the case here, but City has not demonstrated that effective relief would not be available elsewhere. The final factor is the availability of an alternate forum. The City effectively argues it is Piexon's burden to prove the unavailability of a viable alternative forum. The City is mistaken, as plaintiff bears the burden of proving the unavailability of an alternate forum. <u>Fed. Deposit Ins. Corp.</u>, 828 F.2d at 1445. Again, there is no proof of foreign law on whether a Switzerland forum is available. These last two factors, therefore, weight slightly against jurisdiction.

On balance, the Court finds that Piexon has not met its burden to show that it is unreasonable to require it to litigate this action in the forum state of California. Piexon purposefully

1  interjected itself into California by training a California
2  resident on the use of the JPX, and the burden on Piexon in
3  defending the case in California has not been shown to be unusually
4  high as compared with other foreign defendants. Further,
5  considerations of judicial efficiency, the interests of the forum
6  state, and the City's interests weigh strongly in favor of having
7  the case tried in a California court.

8  **IV. Conclusion**

9       For the foregoing reasons, the Motion is DENIED.

10

11  IT IS SO ORDERED.

12

13

14  Dated: December 8, 2014

                                        DEAN D. PREGERSON
15                                      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28